IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| John H. Wooten, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | C.A. No. 9:05-288-23 |
| vs. ) | **ORDER** |
| ) | |
| Medical Life Insurance Co. and ) | |
| Disability Reinsurance Management ) | |
| Services, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the court upon Defendants Medical Life Insurance Company ("Medical Life") and Disability Reinsurance Management Services, Inc ("DRMS"). Motion for Summary Judgment. For the reasons set forth herein, Defendants' motion is granted.

## I. BACKGROUND

Plaintiff was an employee of International Paper Company ("International Paper") and began his employment there on January 30, 1969. International Paper established and maintained group supplemental long-term disability coverage with Medical Life as part of an employee welfare benefit plan. On June 29, 2000, Defendants offered Group Voluntary Benefits, including Long Term Disability Insurance to International Paper employees.

Plaintiff selected a plan whose terms included "flat benefits in $50.00 increments not to exceed 60% of basic monthly earnings to a $5,000.00 maximum" and for which he paid a monthly premium of $98.40 per month. International Paper negotiated the terms of the Medical Life coverage including, but not limited to, the waiting period, elimination period, benefit amount, benefit duration

1

and employee eligibility requirements. The supplemental long-term disability plan was fully insured by Medical Life while DRMS acted as the claims administrator.  (Defs. Mem. at 2).

On August 2, 2001, Plaintiff filed a claim for supplemental long-term disability benefits with Medical Life, claiming he was disabled due to severe neck and shoulder pain caused by cervical stenosis.  On December 11, 2001, DRMS informed Plaintiff that his claim had been approved and explained how his benefits would be calculated.  DRMS found no pre-existing condition and explained that his claim was payable for the full amount under the policy.  Pursuant to its formula, which included Plaintiff's election of benefits in an amount greater than 60% of his pre-disability income, the company concluded that Plaintiff's benefits were $1,516.66 per month. (Defs. Mem. at 2).  Pursuant to the policy, the calculation did not include Plaintiff's overtime pay.

Plaintiff complains that over the life of the policy, he paid more into the plan than he received in benefits and filed a complaint to that effect on September 9, 2004, alleging (1) breach of contract and (2) breach of the covenant of good faith. Defendants removed the action to the court on January 20, 2005, asserting the complaint involved federal law, specifically, the Employee Retirement Income Security Act of 1974 29 U.S.C. § 1001 et. seq. (ERISA).

## II. STANDARD OF REVIEW

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof.  *See Celotex Corp.*

*v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## III. ANALYSIS

Defendants seek summary judgment dismissing Plaintiff's claim on the grounds that (1) ERISA preempts Plaintiff's state law causes of action, (2) Medical Life properly calculated Plaintiff's benefits under the supplemental disability plan and did not abuse its discretion, (3) Plaintiff failed to exhaust his administrative remedies under ERISA, and (4) because Plaintiff's causes of action are preempted by ERISA, DRMS was not a fiduciary under ERISA and therefore not a proper party to be sued. Plaintiff, however, contends that his claims are saved from preemption by ERISA's savings clause and ERISA permits him to recover wrongfully denied benefits, attorney's fees, and equitable relief. *See* 29 U.S.C. §1144 (b)(2)(A). Plaintiff also contends that Medical Life abused its discretion in denying Plaintiff's claim, Plaintiff did not fail to exhaust his remedies, and DRMS is a proper party to this action. The court will address these issues in turn.

    **A.    Preemption under ERISA**

        **a.    Complete Preemption**

"ERISA includes expansive preemption provisions which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *See Aetna Health, Inc. v. Davila,* 124 S.Ct. 2488, 2495 (2004) (internal citations and quotations omitted). "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *See Pilot Life Ins. Co. v.*

*Dedeaux,* 481 U.S. 41, 54 (1987). Therefore, as reiterated by the Supreme Court, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna,* 124 S.Ct. at 2495.

The question of whether Plaintiff's state law causes of action are completely preempted is determined by inquiring into whether the breach of contract and bad faith claims "fit within the scope of ERISA's § 502 (a) civil enforcement provision, and as such, whether they [are] properly converted into federal claims." *See, e.g., Sonoco Prod. Co.v. Physicians Health Plan, Inc.,* 338 F.3d 366, 371 (4th Cir. 2003) (internal citations omitted).[1] The Fourth Circuit has adopted the Seventh Circuit's test for determining whether a state claim is completely preempted by § 502. *Id.* at 372.

---

[1] In *Sonoco,* the Fourth Circuit made clear that an analysis of complete preemption, and not the confusingly similar doctrine of conflict preemption, must be applied when one party removes the case to federal court on the grounds that Congress has so completely preempted a particular area that any complaint raising this select group of claims is necessarily federal in character. 338 F.3d at 372. In the words of the Fourth Circuit, "[i]n the ERISA context, the doctrines of conflict preemption and complete preemption are important, and they are often confused." *Id.* When complete preemption exists, "the plaintiff simply has brought a mislabeled federal claim, which may be asserted under some federal statute." *King v. Marriott International, Inc.,* 337 F.3d 421, 425 (4th Cir. 2003); *Lippard v. UnumProvident Corp.,* 261 F.Supp. 2d 368, 376 (M.D.N.C. 2003) ("[C]omplete preemption . . . exists when the preempted state-law claim falls within the scope of the exclusive civil enforcement mechanism of § 502, in which case the state-law claim is converted into a federal cause of action removable to federal court."). On the other hand, conflict preemption, or ordinary preemption, generally arises as a federal defense to a Plaintiff's suit and does not authorize removal to federal court. *Darcangelo v. Verizon Comm., Inc.,* 292 F.3d 181, 186-87 (4th Cir. 2002).

Here, Defendants removed solely on the basis that Plaintiff's claims arose under ERISA. Accordingly, the court must analyze whether Plaintiff's claims are completely preempted by that statute, and not whether the claims merely relate to ERISA and are preempted by the principles of conflict preemption. *See, e.g., Sonoco,* 338 F.3d at 371 ("[i]nstead of focusing on § 514 conflict preemption, the court should have inquired into whether the breach of contract claims fit within the scope of ERISA's § 502(a) civil enforcement provision, and as such, whether they were properly converted into federal claims.").

4

Pursuant to this test, there are three requirements to establishing complete preemption:

> (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must fall[ ] within the scope of an ERISA provision that [it] can enforce via § 502(a); and (3) the claim must not be capable of resolution without an interpretation of the contract governed by federal law, i.e., an ERISA-governed employee benefit plan.

*Id.*; *see also Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1487 (7th Cir.1996); *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir.1999) (applying similar standard in complete preemption analysis).

Here, Plaintiff clearly has standing under § 502(a) to pursue his claim. Parties entitled to pursue an ERISA claim under § 502(a) are "participants," "fiduciaries," and "beneficiaries." *See* 29 U.S.C. § 1132 (a)(3). ERISA defines a "participant" as "any employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). Both parties acknowledge that Plaintiff is a beneficiary under the Medical Life plan. Second, Plaintiff's claim falls within the scope of an ERISA provision that he can enforce via § 502. Section 502(a)(1)(B) allows a plaintiff to bring a claim "to recover benefits due to [him] under the terms of a plan." Plaintiff seeks to challenge the calculation of the benefits which have been paid to him and to recover the remainder of benefits he feels entitled to under the plan. There can be no doubt that this type of relief falls within the ambit of remedies provided by § 502. *See, e.g.*, *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 290-91 (4th Cir. 2003) (holding that health maintenance organization (HMO) member's claims which sought return of plan benefits fell within scope of ERISA civil enforcement provision and were completely preempted); *Darcangelo,* 292 F.3d at 195 ("[A]n action to enforce the terms of a contract, when that contract is an ERISA plan, is of necessity an alternative enforcement mechanism for ERISA § 502"). Finally, Plaintiff's claim for benefits cannot be resolved without an interpretation of the plan which he claims provides these benefits. *See, e.g.*, *Powell v. Chesapeake and Potomac Tele. Co.,* 780

F.2d 419, 422 (4th Cir. 1985) ("To the extent that ERISA redresses the mishandling of benefits claims or other maladministration of employee benefit plans, it preempts analogous causes of action [including contract and tort claims], whatever their form or label under state law."). Accordingly, Plaintiff's claims are completely preempted by ERISA.

### 2. ERISA's Savings Clause

Plaintiff contends that ERISA contains a savings clause that "effectively 'trumps' application of ERISA's preemption clause." (Pl. Resp. at 3). Plaintiff directs the court to 29 U.S.C. §1144 (b)(2)(A), which provides that laws of a state which regulate insurance are saved from preemption. In Plaintiff's view, South Carolina's tort law of bad faith is a law regulating insurance within the meaning of this section, and thus his second cause of action survives.[2]

#### a. *Pilot Life*

In *Pilot Life,* 481 U.S. at 49, the Supreme Court considered whether a provision of Mississippi common law similar to the South Carolina bad faith law at issue in this case fell within ERISA's savings clause. In considering whether the law regulated insurance, the Court first "took what guidance [was] available from a 'common-sense view' of the language of the savings clause itself." *Id.* at 48. The

---

[2] The court construes Plaintiff to be arguing only that the savings clause applies to his bad faith claim, and not to his breach of contract claim, as Plaintiff's Reply focuses only on the application of the savings clause to this claim. (Pl. Resp. at 4-7). At any rate, there would be no way to conclude that a breach of contract claim fell within the savings clause, as it cannot be said that state contract law as a whole is aimed at regulating insurance. *See, e.g., Cannon v. Group Health Serv. of Okla., Inc.,* 77 F.3d 1270, 1275-76 (10th Cir. 1996) (stating that common-law principles on breach of contract, fiduciary duty negligence, and bad faith in connection with processing claim under employee welfare benefit plan did not involve 'business of insurance' and, therefore, were not saved from preemption by savings clause that nothing in ERISA exempts any person from law regulating insurance.); *Powell,* 780 F.2d at 421 (state law claims for breach of contract are preempted because they are in the nature of a claim for improper denial of benefits under the plan).

6

Court stated that "to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Id.* at 50. Second, the court announced three factors to determine whether the regulation fits within the "business of insurance" as that phrase is used in the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq*.: "(1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry." *Id*. at 48-49. Under this test, the Court concluded that Mississippi's law of bad faith did not fall within ERISA's savings clause, as it was not directed at insurance and was not an integral part of the policy relationship between the insurer and insured. *Id.* at 50-52 (noting that "[e]ven though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law.").

Not surprisingly, an overwhelming majority of circuit and district courts have similarly concluded that § 514 does not save state bad faith claims strikingly similar to Plaintiff's claim from preemption. *See, e.g., Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1215 (11th Cir.1999) (ERISA preempts the Alabama tort of bad faith)*; Gaylor v. John Hancock Mut. Life Ins. Co.,* 112 F.3d 460, 466 (10th Cir.1997) (Oklahoma's bad faith law is preempted by ERISA because "although Oklahoma's bad faith law is specifically directed at the insurance industry, . . . like the bad faith law in *Pilot Life,* its origins are from general principles of tort and contract law."); *Schachner v. Blue Cross and Blue Shield of Ohio*, 77 F.3d 889, 898 (6th Cir. 1996) (Ohio common law right to a tort action for an insurer's bad faith breach of an obligation to pay a claim is preempted by ERISA)*; Int'l Res., Inc. v. New York Life Ins. Co.,* 950 F.2d 294, 299 -00 (6th Cir.1991) (the Kentucky tort of bad faith insurance practices, which was limited to the insurance industry, was not protected by ERISA's savings clause)*;*

7

*Kelley v. Sears, Roebuck & Co.,* 882 F.2d 453, 456 (10th Cir.1989) (ERISA preempts a Colorado bad faith claim because Colorado's common law of bad faith does not regulate insurance but was developed from the general principles of tort and contract law); *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489 (9th Cir. 1988) (California statute prohibiting unfair insurance claims processing was preempted by ERISA); *In re Life Ins. Co. of N. Am.,* 857 F.2d 1190 (8th Cir. 1988) (Missouri statute prohibiting vexatious refusal to pay insurance claims was preempted by ERISA); *Starnes v. Gen. Elec. Co.*, 201 F.Supp. 2d 549, 565 (M.D.N.C. 2002) (North Carolina bad faith claim preempted by ERISA); *Allison v. Cont'l Cas. Ins. Co.*, 953 F.Supp. 127, 129 (E.D. Va. 1996) (Virginia bad faith action preempted).[3]

### b.     *Unum Life Ins. Co. of America v. Ward*

Plaintiff, however, contends that the Supreme Court modified the application of the savings clause to bad faith claims in *Unum Life Ins. Co. of Am. v. Ward,* 526 U.S. 358, 367 (1999). Plaintiff suggests that *Ward* eradicated the "widespread but erroneous belief [arising from *Pilot Life*] that any state law related to insurance matters and governed by ERISA is, in turn, preempted by ERISA." (Pl. Resp. at 4). In *Ward*, the Court held that California's notice-prejudice rule, under which an insurer could not deny benefits due to an insured's late notice without showing that the insurer suffered prejudice, fell within ERISA's savings clause. 526 U.S. at 367. In so holding, the Court reasoned that "the rule control[led] the terms of the insurance relationship" and was directed at the insurance industry.

---

[3] Of particular relevance to this court's ruling is a 1993 decision of the South Carolina Supreme Court. In *Duncan v. Provident Mut. Life Ins. Co. of Philadelphia,* 427 S.E. 2d 657, 659 (S.C. 1993), the court held that, pursuant to *Pilot Life,* ERISA preempted a state law claim for bad faith breach of insurance contract. The *Duncan* court held that "[w]hile *Nichols* promotes this State's long held philosophy that those in the insurance industry who fail to deal in good faith should be penalized, this Court is reluctantly bound by ERISA and federal law to hold that the tort created by *Nichols* is expressly preempted when the bad faith claim arises under an employee benefit plan." 427 S.E. 2d at 659. The court finds this holding highly persuasive.

8

*Id.*

The court is puzzled by Plaintiff's suggestion that *Ward* changed the ERISA savings clause analysis. Instead, *Ward* straightforwardly applied the test announced by *Pilot Life*. The only difference between the two decisions is that the regulation in *Ward* was directed at the insurance industry and thus fell within the savings clause, whereas the bad faith law in *Pilot Life* was not targeted at insurance and thus was preempted. Moreover, Plaintiff's claim here is precisely analogous to the claim at issue in *Pilot Life,* and is nothing like the insurance regulation at issue in *Ward.* In short, the court does not agree with Plaintiff's proposition that *Ward* saves her bad faith claim from preemption. *See, e.g., Conover v. Aetna U.S. Healthcare, Inc.,* 320 F.3d 1076, 1079 n.2 (10th Cir. 2003); *Walker v. S. Co. Servs., Inc.,* 279 F.3d at 1292-93 (11th Cir. 2002) ("[*Ward*] merely comments on the fact that the Mississippi law failed the common sense test; it does not create a new standard for analyzing ERISA's savings clause."); *Gilbert v. Alta Health & Life Ins. Co.,* 276 F.3d 1292 (11th Cir. 2001) ("we see nothing in *Ward* that is inconsistent with . . . *Pilot Life*."); *Jabour v. CIGNA Healthcare of Cal., Inc.,* 162 F.Supp. 2d 1119, 1129 n.9 (C.D. Ca. 2001) ("If anything, footnote 7 [of *Ward*] only reinforces this Court's conclusion that *Ward* supports and extends the *Pilot Life* finding that a state law bad faith claim is preempted by ERISA."); *Salva v. Blue Cross and Blue Shield of Ala.,* (S.D. Ala. 2001) ("*Ward*'s footnote 7 . . . simply and unremarkably acknowledges that, because Mississippi's tort of bad faith is 'not specifically directed to the insurance industry,' it cannot satisfy the common-sense test and therefore cannot fall within the savings clause."). Accordingly, Plaintiff's claim for bad faith is preempted by ERISA.

### B.     Amendment versus Dismissal

The court has found that Plaintiff's sole remedy for the claims asserted in his state law complaint

is provided by ERISA § 502 (a), which allows a participant to bring a civil enforcement action "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *See* 29 U.S.C. § 1132 (a)(1) (B). The proper remedy in this situation is not to dismiss Plaintiff's claim, but to re-characterize it as an ERISA claim. *See, e.g., Marks v. Watters*, 322 F.3d 316, 327 (4th Cir. 2003) (determining that plaintiff's state-law claims were completely preempted and then assessing their merits, treating them as § 502(a) claims); *Darcangelo,* 292 F.3d at 195 ("Nevertheless, when a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502, the federal court should not dismiss the claim as preempted, but should treat it as a federal claim under § 502.").

    **C.**  **Plaintiff failed to exhaust his administrative remedies under the plan**

Defendants claim that Plaintiff failed to meet the threshold test of exhausting his administrative remedies under the Plan. Plaintiff, however, contends that he did complain about his benefits previously and argues that neither Defendants, nor the Employee Benefit Booklet, ever informed him of his right to appeal. For the following reasons, the court sides with Defendants.

Although the text of ERISA does not mandate such administrative compliance as a prerequisite to bringing a civil action, the majority of courts, including the Fourth Circuit, have held that Congress' intent was to encourage private resolution of ERISA disputes, and ERISA's "text and structure" support this conclusion. *Makar v. Health Care Corp. of Mid-Atlantic*, 872 F.2d 80 (4th Cir. 1989). *See Kross v. Western Elec. Co.*, 701 F.2d 1238, 1243-45 (7th Cir. 1983). The Ninth Circuit in *Amato v. Bernard*, 618 F.2d 559, 567-68 (9th Cir. 1980) presented the considerations which require an ERISA claimant, in most circumstances, to exhaust his administrative remedies before bringing suit in federal court:

> The institution of . . . administrative claim-resolution procedures was apparently intended by Congress to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned.

*Kross*, 701 F.2d at 1244-1245.

Courts further require participants to file appeals in a timely fashion because the "haphazard waiver of time limits would increase the probability of inconsistent results where one claimant is held to the limitation, and another is not." *Terry v. Bayer Corp.*, 145 F.3d 28, 40 (1st Cir. 1998). Internal appeal limitation periods in ERISA plans are to be adhered to as if they were normal statutes of limitations. *Gayle*, 401 F.3d at 226. *See also Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000) ("[F]ailure to file a request for review within [a plan's] limitations period is one means by which a claimant may fail to exhaust her administrative remedies.").

An ERISA welfare benefit plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts. *Gayle v. UPS*, 401 F.3d 222, 226 (4th Cir. 2005), *see also Makar*, 872 F.2d at 82 (exhaustion of plan's remedies is "a prerequisite to an ERISA action for denial of benefits"). If an employee fails to comply with the benefit plan's internal administrative procedures for appealing a denial or award of benefits, summary judgment should be granted for failure to exhaust the administrative remedies under ERISA. *See, e.g., Moses v. Provident Life and Accident Ins. Co.*, 2003 U.S. Dist. LEXIS 4529 (D.N.C. 2003) ("If an employee fails to follow the benefit plans' internal procedures for review of a denial of benefits, summary judgment should be granted for failure to exhaust the administrative remedies under ERISA."); *United Paperworkers Int'l Union Local 425 v. Champion Int'l Corp.*, 990 F. Supp. 423 (D.N.C. 1998) ("Because Schuster has not exhausted her remedies under the claims review procedures provided by the disability and medical benefits plans . . . this Court cannot

entertain these claims in this action.").

Here, contrary to Plaintiff's assertion, the Employee Benefit Booklet states on page twenty-seven (27) that a claimant "may request a review upon written application within 180 days of the claim denial." (Employee Benefit Booklet at 27.) Since he was notified on October 9, 2001 and again on December 11, 2001 of the amount he was to receive and the process by which the amount was calculated, Plaintiff had ample time to appeal the calculation within the requisite 180 days. Because he did not submit his appeal until March 10, 2003, more than three years after being notified on his benefits, Plaintiff's appeal was untimely.

Plaintiff claims that he complained "on at least three (3) occasions," but does not state the time of those complaints or identify in the record any evidence in support. (Pl. Resp. at 10.) Federal Rule of Civil Procedure 56 (e) requires Plaintiff, as the nonmoving party, to go beyond the "mere allegations or denials" of the pleadings and by his own affidavit, or by the "depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56 (e)); *see also Mitchell, Best & Visnic, Inc. v. Travelers Prop.*, 35 Fed. Appx. 75 (4th Cir. 2002) (stating the nonmoving party must come forward with specific facts showing there is a genuine issue for trial.); *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992) ("[S]ufficient evidence (pertinent to the material issue) *must be identified by reference* to an affidavit, a deposition transcript or a specific exhibit incorporated therein.") (emphasis added). In the absence of such specific references, the court will "not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury." *Id.* at 1025. Moreover, this District has promulgated Local Rule 7.05(5) which expressly defines the degree of specificity which the court expects: "[w]here the memorandum opposes a motion for summary

judgment, a concise statement of the material facts in dispute shall be set forth *with reference to the location in the record.*" D.S.C. Loc. R. Civ. P. 7.05(5) (emphasis added). Because Plaintiff has not proffered sufficient evidence to support his claim as to the miscalculation of his benefits prior to March 10, 2003, Defendants are entitled to judgment as a matter of law. Since this threshold question of remedy exhaustion was not met, the court need not address the remaining issues and dismisses the action. *See, e.g., Gayle*, 401 F.3d at 229-30 ("We therefore affirm the district court's dismissal with prejudice of plaintiff's . . . cause of action for remand to the Plan. This must follow from the legal conclusion that [the plaintiff] has neglected to exhaust her Plan remedies, and for lack of timeliness, cannot now do so.").

## IV. CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendants' Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**August 16, 2005**